UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KATHLEEN L. SUMMERS,<br><br>Plaintiff,<br><br>v.<br><br>MEDTRONIC, INC., and MEDTRONIC USA INC.,<br><br>Defendants. | *<br>*<br>*<br>*<br>*  Civil Action No. 1:24-cv-11793-IT<br>*<br>*<br>*<br>* |

MEMORANDUM & ORDER

March 18, 2025

TALWANI, D.J.

Before the court is Medtronic, Inc., and Medtronic USA, Inc.'s ("Medtronic") Motion to Dismiss [Doc. No. 5] Plaintiff Kathleen Summers's Complaint [Doc. No. 1-1]. Summers asserts state law claims arising from alleged defects in three implanted medical devices that Medtronic manufactured and marketed. Medtronic argues that Summers's claims are preempted by the Medical Device Amendments ("MDA") to the Federal Food, Drug, and Cosmetic Act ("FDCA") and that Summers has not adequately pleaded her claims. Mot. 2 [Doc. No. 5]. For the following reasons, Medtronic's Motion [Doc. No. 5] is GRANTED.

I.      Factual Background as Alleged in the Complaint

Medtronic designs, manufactures, and sells medical instruments and surgical devices, including pacemakers and defibrillators. Compl. ¶ 4 [Doc. No. 1-1]. In March 2007, Summers underwent surgery and was implanted with a defibrillator and associated leads and devices that Medtronic manufactured. Id. at ¶ 6. The devices at issue have the serial numbers BBL184699V (model number 4076-52), LFJ224545V (model number 6949-65), and BAA16965IV (model number 419388). Id.

On October 2, 2021, Summers's defibrillator activated and shocked her while she was walking from her car into a mall. Id. at ¶ 8. Summers drove home, and the defibrillator continued to repeatedly activate about every 45 seconds. Id. at ¶ 9–10. The defibrillator continued to activate when Summers arrived at home. Id. at ¶ 11. Summers was taken in an ambulance to Brockton Hospital, and her defibrillator activated throughout the trip and at the hospital. Id. at ¶ 12. The following morning, a doctor informed Summers that her defibrillator had activated 99 times before she went into cardiac arrest. Id. at ¶ 14. Summers underwent surgery to remove the defibrillator. Id. at ¶ 15.

## II.     Procedural Background

Summers filed this action in Plymouth County Superior Court, alleging three state tort claims: breach of the warranty of merchantability, breach of the warranty of fitness for a particular purpose, and negligence. Id. at ¶¶ 19–24; see Notice of Removal [Doc. No. 1]. Medtronic removed the case to this court and filed the pending Motion to Dismiss [Doc. No. 5] seeking to dismiss Summers's claims as preempted by the MDA and alternatively for failure to state a plausible claim for relief. See Mem. ISO Mot. [Doc. No. 6].

## III.     Standard of Review

In evaluating a motion to dismiss for failure to state a claim, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In ruling on a motion to dismiss, "a judge can mull over 'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice.'" Lydon v. Local 103, Int'l Bhd. of Elec. Workers, 770 F.3d 48, 53 (1st Cir. 2014) (quoting Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008)) (alteration in original).

## IV.   Discussion

Medtronic asserts that the MDA preempts Summers's claims because the devices at issue are Class III medical devices that have been approved through the FDA's premarket approval ("PMA") process. Mem. ISO Mot. 5 [Doc. No. 6].[1] Summers concedes that the devices are Class III devices. See Opp'n 1 [Doc. No. 8] ("All of these devices, because they are implants, are deemed under [FDA] regulations to be Class III [devices] creating the highest risk to implantee's health, including the risk of death."). She argues that her claims nonetheless may proceed because they are based on state-law tort duties that "'parallel,' rather than add to, federal requirements." Id. at 2.

---

[1] On Medtronic's unopposed request, see Mem. ISO Mot. 3 n.3 [Doc. No. 6], the court takes judicial notice that the devices at issue have received premarket approval from the FDA. See Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Premarket Approval*, U.S. FOOD & DRUG ADMINISTRATION, https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpma/pma.cfm?id=P920015S029 (last visited March 17, 2025) (serial number LFJ224545V; model number 6949-65); *Premarket Approval*, U.S. FOOD & DRUG ADMINISTRATION, https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpma/pma.cfm?id=P010015S007 (last visited March 17, 2025) (serial number BAA169651V; model number 419388); *Premarket Approval*, U.S. FOOD & DRUG ADMINISTRATION, https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpma/pma.cfm?id=P930039S017 (last visited March 17, 2025) (serial number BBL184699V; model number 4076-52).

Under the MDA, medical devices are classified into three categories. See 21 U.S.C. § 360c(a). Class III devices either "presen[t] a potential unreasonable risk of illness or injury," or are "purported or represented to be for a use in supporting or sustaining human life or for a use which is of substantial importance in preventing impairment of human health." Id. at § 360c(a)(1)(C). Except for devices introduced into the market before the MDA's enactment and others that the FDA deems "substantially equivalent" to such devices, Class III devices are subject to the PMA process, which "provide[s] reasonable assurance of . . . safety and effectiveness. Id.; see id. at § 360e(b) (exceptions). The PMA process requires manufacturers to submit detailed product information and entails approximately 1,200 hours of FDA review. See Riegel v. Medtronic, Inc., 552 U.S. 312, 317–18 (2008).

The MDA contains a preemption clause that bars states from imposing additional requirements on devices approved by the FDA:

> [N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—
>
>    (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and
>
>    (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. §360k(a).

"Nothing in § 360k denies [States] the right to provide a traditional damages remedy for violations of common-law duties when those duties parallel federal requirements." Medtronic, Inc. v. Lohr, 518 U.S. 470, 495 (1996); see also id. at 496–97 ("The regulations promulgated by the FDA expressly support the conclusion that § 360k 'does not preempt State or local requirements that are equal to, or substantially identical to, requirements imposed by or under the act.'" Id. (quoting 21 C.F.R. § 808.1(d)(2) (1995)). Accordingly, "to the extent that

4

[manufacturing and labeling claims] rest on claims that Medtronic negligently failed to comply with duties 'equal to, or substantially identical to, requirements imposed' under federal law[,]" id. at 497, they are not subject to dismissal on preemption grounds.

However, "[c]ommon-law causes of action for negligence and strict liability do impose 'requirement[s]' and would be pre-empted by federal requirements specific to a medical device." Riegel, 552 U.S. at 323–24. The PMA process imposes device-specific "requirements" under the MDA because the FDA may only grant premarket approval to a device if it determines that the device offers a reasonable assurance of safety and effectiveness. Id. at 322–23 (citing 21 U.S.C. § 360e(d)). Further, the FDA requires that a device that has received premarket approval be manufactured with almost no deviations from the specifications in its approval application. Id. at 323. Therefore, common law actions based on state tort law that requires a manufacturer's devices to be safer than the model that the FDA has approved are preempted. See id. at 325.

Summers's breach-of-warranty claims assert that the implants she received were not fit for use. See Compl. ¶¶ 20, 22 [Doc. No. 1-1]. In substance, these claims allege that the devices are not reasonably safe and effective despite the FDA's findings to the contrary. Therefore, the MDA preempts Summers's breach of warranty claims. See Duggan v. Medtronic, Inc., 840 F. Supp. 2d 466, 468, 473 (D. Mass. 2012) (holding MDA preempted breach of implied warranty of merchantability and implied warranty of fitness for a particular purpose claims regarding device approved through PMA process).

To support her negligence claim, Summers alleges, "[u]pon information and belief, . . . that Defendants had prior knowledge of the malfunction of the implanted devices but failed to notify Plaintiff of the need to take corrective measures or actions." Compl. ¶ 16 [Doc. No. 1-1]; see also id. at ¶ 24 (Defendants "ha[d] foreknowledge of the possible malfunctions of the

5

implanted devices"). The MDA preempts failure-to-warn claims that challenge the adequacy of FDA-approved labeling. See King v. Collagen Corp., 983 F.2d 1130, 1136 (1st Cir. 1993). Summers's negligence claim is thus preempted to the extent it asserts that the FDA-approved warnings that she received were inadequate.

In her Opposition, Summers argues that her negligence claim is based on "Defendants' duty to monitor its products and inform its customers of <u>aftermarket</u> discovered defects" and a "failure to act <u>post-market</u>, in dereliction of a duty to warn arising from product defects which surfaced some time <u>after</u> implantation of the devices." See Opp'n 1–2 [Doc. No. 8] (emphasis added). She further claims that "[d]iscovery will reveal" that Defendants did not disclose these malfunctions to the FDA. Id. at 2. She contends the claim is "not based upon any premarket conditions." Id.

Summers asserts that this aftermarket claim is found in the Complaint's allegation that "Defendants had prior knowledge of the malfunction of the implanted devices but failed to notify Plaintiff of the need to take corrective measures or actions." Compl. ¶ 16 [Doc. No. 1-1]; see Opp'n 1–2 [Doc. No. 8]. The Complaint does not allege, however, that Medtronic became aware of device malfunctions after FDA approval. Summers may not add facts through her opposition brief that she did not plead in her complaint. See Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (explaining that on motion to dismiss, court is limited to considering facts and documents that are part of or incorporated into complaint and "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice") (quoting In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 20 (1st Cir. 2003)); see also Gordon-Johnson v. Clinical & Support Options, Inc., 2025 WL 509502, at *5 (D. Mass. Feb. 14, 2025) (explaining plaintiff may not "use her opposition brief to add new facts that she failed to plead in

6

her Complaint"). Where Summers's Complaint does not allege when Medtronic became aware of device malfunctions, she has failed to state a negligence claim based on a duty to warn of defects that Medtronic discovered after Summers received the implants.

### V.     Conclusion

For the foregoing reasons, Medtronic's <u>Motion</u> [Doc. No. 5] is GRANTED. Any motion for leave to amend the Complaint shall be filed no later than April 1, 2025.

IT IS SO ORDERED.

March 18, 2025                                    /s/ Indira Talwani
                                                  United States District Judge